# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

WILLIAM LINDALA, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

        v.

TRUEACCORD CORP.,

        Defendant.

Case No.: 19-cv-1370

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1.    This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2.    The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337.

## PARTIES

3.    Plaintiff William Lindala is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.    Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family, or household purposes.

5.    Defendant TrueAccord Corp. ("TrueAccord") is a foreign business corporation with its principal offices located at 303 2nd Street, Suite 750 South, San Francisco, California 94107.

6. TrueAccord is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. TrueAccord is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. TrueAccord is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

9. On or about September 9, 2019, TrueAccord sent Plaintiff an e-mail (the "9/9 E-mail") in connection with an attempt to collect an alleged debt owed to "LVNV Funding LLC," and originally owed to "Credit One Bank, N.A." A copy of the 9/9 E-mail is attached to this complaint as Exhibit A.

10. Upon information and belief, the alleged debt referenced in the 9/9 E-mail was incurred by use of a credit card, used only for personal, family, or household purposes.

11. Upon information and belief, the 9/9 E-mail is a form e-mail, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, the 9/9 E-mail was the first written communication Plaintiff received from TrueAccord regarding the alleged debt referenced in Exhibit A.

13. The 9/9 E-mail contains the validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors to provide along with their initial communications:

Unless you notify us within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid. If you notify us in writing within 30 days from receiving this notice that you dispute all or any portion of this debt, we will obtain verification of the debt or obtain a copy of a judgment and send you a copy of such verification or judgment. You may also request in writing within 30 days of receiving this notice that we provide you with the name and address of the original creditor, if different from the current creditor.

14. The 9/9 E-mail also contained several hyperlinks to TrueAccord's website, including a hyperlink which read: "Dispute this debt."

15.     Clicking the "Dispute this debt" hyperlink included in the above referenced takes the consumer to webpage the following URL: https://www.trueaccord.com/app/pages/dispute-verification?d=83a58cf96d56469a8d68d99dd56b0513 (the "Disputes Webpage"). A reproduction of a screenshot of the Disputes Webpage as of September 13, 2019 is attached to this complaint as Exhibit B.

16.     The Disputes Webpage includes representations which provide for a two-step process for disputing and/or requesting verification of consumers' alleged debt. The first step instructs consumers to "Review your debt information," which includes the consumer's name, "TrueAccord Account Number," creditor, original creditor, and balance, all of which is displayed on the Disputes Webpage. The second step instructs the consumer to "Contact TrueAccord," and further states: "If you have questions or would like to dispute your debt, please reach out using the contact information at the bottom of this page."

17.     The bottom of the Disputes Webpage includes the following representation:



Email: support@trueaccord.com or call us toll free at (866) 611-2731
Office Hours: 8 AM - 6 PM ET Monday - Friday

18.     The Disputes Webpage is deceptive, misleading, and confusing to the unsophisticated consumer.

19.     The instruction in the Disputes Webpage that the consumer may "Call reach out using the contact information at the bottom of this page," is false, deceptive, misleading, and confusing to the unsophisticated consumer because it contradicts, overshadows, and confuses the debt validation notice stated in the 9/9 E-mail, and encourages the consumer to forego her verification rights by communicating disputes orally rather than in writing. *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 347-48 (7th Cir. 2018) (oral disputes do not entitle consumers to verification rights, including "the ultimate power vis-à-vis debt collectors: the

3

power to demand cessation of all collection activities"); *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 759 (6th Cir. 2018) ("*Macy II*") ("Including a materially false, deceptive, or misleading statement in a debt-collection communication may cause an individual 'to lose the very … rights that the law affords him.'"); *Macy v. GC Servs. Ltd. P'ship*., Civil Action No. 3:15-cv-819-DJH, 2016 U.S. Dist. LEXIS 134421 *14-15 (W.D. Ky. Sep. 29, 2016) ("*Macy I*"); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F. Supp. 2d 841, 844-45 (E.D. Va. 2011).

20.     15 U.S.C. § 1692g(a)(4) states:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

…

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

21.     To trigger verification rights, the debtor must provide the debt collector with written notification that there is a dispute. 15 U.S.C. § 1692g(a)(4); *see also Macy II*, 897 F.3d at 757-58:

GC's letters present a risk of harm to the FDCPA's goal of ensuring that consumers are free from deceptive debt-collection practices because the letters provide misleading information about the manner in which the consumer can exercise the consumer's statutory right to obtain verification of the debt or information regarding the original creditor. In responding to a debt-collection notice, an oral inquiry or dispute of a debt's validity has different legal consequences than a written one. ... If a consumer contests a debt by telephone rather than in writing, the consumer loses most of the protections for debtors set forth in Section 1692g; the debt-collection agency is under no obligation to verify the debt and to cease all collection efforts as required by §1692g(b).

4

*See also Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005) (noting that Section 1692g "assigns lesser rights to debtors who orally dispute a debt and greater rights to debtors who dispute it in writing"); *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013) ("Debtors can protect certain basic rights through an oral dispute, but can trigger a broader set of rights by disputing a debt in writing."); *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. July 8, 2003) ("If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.") (citing *Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. May 20, 1999)).

22.     Upon receiving a *written* dispute from the consumer within the 30-day debt validation period, the FDCPA requires the debt collector to contact the creditor and obtain verification of the debt before conducting any further collection efforts. 15 U.S.C. § 1692g(b):

> **Disputed debts**
> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

23.     Congress adopted a specific FDCPA dispute procedure in 15 U.S.C. § 1692g "to eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Majeski v. I.C. Sys.*, 2010 U.S. Dist. LEXIS

1830, at *22 n.6 (quoting *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988).

24.     The Disputes Webpage confusingly and misleadingly directs the consumer to notify TrueAccord about disputes without informing the consumer that oral disputes do not trigger verification.

25.     Courts throughout the country have found that a debt collector overshadows the consumer's statutory validation rights by directing them to dispute their debts by telephone. *See Beaufrand v. Portfolio Recovery Assocs., LLC*, No. 18-CV-214, 2018 U.S. Dist. LEXIS 197339 *14-15 (E.D. Wis. Nov. 20, 2018); *Miller v. Payco-General American Credits, Inc.*, 943 F.2d 482 (4th Cir. 1991) (holding the inclusion of the statement "PHONE US TODAY" in an initial collection letter to overshadow the validation notice."); *Caprio*, 709 F.3d at 152 (3d Cir. 2013) (reversing dismissal of the plaintiff's overshadowing claims, because the letter at issue "can be reasonably read to have two or more different meanings, one of which is inaccurate, i.e., that [the plaintiff] could dispute the debt by making a telephone call."); *Durkin v. Equifax Check Servs.*, 406 F.3d 410, 417 (7th Cir. 2005); *Laniado v. Certified Credit & Collection Bureau*, 705 Fed. Appx. 87 (3d Cir. 2017) (unpublished) (holding the inclusion of the statement "SHOULD THERE BE ANY DISCREPANCY PLEASE CALL TOLL FREE" in a collection letter sent within the 30-day validation period overshadows the validation notice); *Seplak by Seplak v. IMBS, Inc.*, 1999 U.S. Dist. LEXIS 2106, 1999 WL 104730 (N.D Ill. February 23, 1999); *Flowers v. Accelerated Bureau of Collections*, 1997 U.S. Dist. LEXIS 3354, 1997 WL 136313 (N.D. Ill. March 13, 1997); *Stebbins v. Allied Account Servs.*, 1991 U.S. Dist. LEXIS 21778, *7 (D. Conn. September 9, 1991); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. 1990); *Gaetano v. Payco of Wisconsin*, 774 F. Supp. 1404, 1411-12 (D. Conn. 1990);

6

*Garrett v. Credit Bureau of Carbon County d/b/a Collection Center, Inc.*, 2018 Colo. App. LEXIS 1447 (Col. Ct. App. Oct. 18, 2018); *Osborn v. Ekpsz, LLC*, 821 F. Supp. 2d 859, 868, 870 (S.D. Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under subsections(a)(4) and (a)(5) must be made in writing."); *McCabe*, 272 F. Supp. 2d at 743-44 (omitting the words "in writing" from the validation notice conflicted with and overshadowed the consumer's statutory right to trigger verification); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at *9 (S.D. Ind. Sept. 25, 2017); *Crafton v. Law Firm of Levine*, 957 F. Supp. 2d 992, 998 (E.D. Wis. July 9, 2013); *Bicking*, 783 F. Supp. 2d at 845 (E.D. Va. May 5, 2011); *Welker v. Law Office of Daniel J. Horowitz*, 699 F. Supp. 2d 1164, 1170 (S.D. Cal. 2010); *Beasley v. Sessoms & Rogers, P.A.*, 2010 U.S. Dist. LEXIS 52010 (E.D. N.C. Mar. 1, 2010); *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F.Supp.2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353, at *16 (N.D. Cal. Mar. 24, 2006); *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F.Supp.2d 336, 340 (E.D.N.Y. Aug. 19, 2002); *Carroll v. United Compucred Collections*, 2002 U.S. Dist. LEXIS 25032, at *28 (M.D. Tenn. Nov. 15 2002); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990); *Rhoades v. West Virginia Credit Bureau Reporting Servs.*, 96 F. Supp. 2d 528, (S.D. W. Va. May 10, 2000); *O'Chaney v. Shapiro & Kreisman, LLC*, U.S. Dist. LEXIS 5116, at *12-13 (Mar. 25, 2004); *Flowers v. Accelerated Bureau of Collections*, 1997 U.S. Dist. LEXIS 3354, at *18-19 (N.D. Ill. Mar. 13, 1997).

26. TrueAccord's instruction included in the Disputes Webpage that the consumer may communicate disputes by telephone rather than in writing contradict and overshadow the validation notice.

27.     The instruction that the consumer may communicate her dispute by telephone would confuse and mislead consumers who wish to dispute debts to believe that a debtor who disputes her debt orally is entitled to the same protections as if she had communicated her dispute in writing, when she is not so entitled. *See Camacho*, 430 F.3d at 1082.

28.     Furthermore, the 9/9 E-mail included a hyperlink which read: "Learn More."

29.     Clicking the "Learn More" hyperlink included in the 9/9 E-mail takes the consumer to webpage featuring a header reading "Check out your Payment Options, with the following URL: https://www.trueaccord.com/app/pages/your-options?tvmr=CiA4M2E1OGNm OTZkNTY0NjlhOGQ2OGQ5OWRkNTZiMDUxM2IgMDFhOWNkNjBiOTg2NDg3MWFhYT kzOWE4Mzk1YWNhODdyIDM4ZmU1MDE3NmI3ZTRhNTVhMTU4M2EwNzE5OGNmMW My (the "Payment Options Webpage"). A reproduction of a screenshot of the Payments Options Webpage as of September 13, 2019 is attached to this complaint as Exhibit C.

30.     In turn, the Payment Options Webpage includes a hyperlink which reads: "View payment plan options."

31.     Clicking the "View payment plan options" hyperlink included in the Payment Options Webpage takes the consumer to webpage with the following URL: https://www.trueaccord.com/app/pages/payment-plan_selection?d=83a58cf96d56469a8d68d99dd 56b0513 (the "Payment Plan Webpage").

8

32.     The Payment Plan Webpage presents the consumer with multiple settlement offers for various amounts in a varying number of installments. For example, the "3 Month Plan" would present Plaintiff with the following option:



33.     Although the settlement offers each present consumers with a set number of installments, there is no particular deadline listed by which the consumer must make any payment.

34.     Additionally, included in each settlement offer is the statement: "We are not obligated to renew this offer."

35.     Upon information and belief, the statement that TrueAccord is "not obligated to renew this offer," is a material false, deceptive, and misleading statement.

36.     In the absence of an expiration date, the unsophisticated consumer would understand a statement that the debt collector is "not obligated to renew this offer," to mean that TrueAccord could, and would, rescind the settlement offer at any time and without notice.

37.     Upon information and belief, the debtor can settle the account for any of the amounts listed on the Payment Options Webpage, or less, at any time.

9

38.     In order to preserve debt collectors' negotiating positions and prevent the settlement process from disintegrating, while still enforcing the congressional mandate prohibiting debt collectors from making false, deceptive, and misleading representations, the Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding L*, 505 F.3d 769, 775-76 (7th Cir. 2007).

39.     While <u>Exhibit A</u> tracks this safe-harbor language, without an expiration date, the language does not have its intended effect.

40.     Where the debt collector states that it is not obligated to renew an offer but does not include an expiration date by which payment must be made, the unsophisticated consumer would understand the safe-harbor language to mean that the offer was subject to revocation.

41.     The unsophisticated consumer may even believe that the law requires a debt collector to include the Seventh Circuit's safe-harbor language if it will rescind the offer.

42.     Without an expiration date, the unsophisticated consumer would interpret a debt collector's statement that it is "not obligated to renew" as an implied threat to revoke the settlement offer at any time and without notice.

43.     Where the Seventh Circuit prescribes safe-harbor language, this language is not "blessed" as generally acceptable---rather, the Seventh Circuit has made it clear that its safe-harbor language applies only in the specific "type" of case addressed in the opinion and that very

language may, in fact, violate the FDCPA under other circumstances. *E.g., Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 371 (7th Cir. 2018) ("debt collectors cannot immunize themselves from FDCPA liability by blindly copying and pasting the *Miller* safe harbor language without regard for whether that language is accurate under the circumstances."); *Evory*, 505 F.3d at 775-76 ("we think the *present concern* can be adequately addressed …"); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) ("We commend this redaction as a safe harbor … for the kind of suit Bartlett has brought and now won. The qualification 'for the kind of suit that Bartlett has brought and now won' is important. We are not certifying our letter against challenges based on other provisions of the statute; those provisions are not before us."); *see also O'Chaney v. Shapiro and Kreisman, LLC*, 2004 U.S. Dist LEXIS 5116, at *13 (N.D. Ill. Mar. 25, 2004) (rejecting the argument that a debt collector could avoid liability for use of safe harbor language where the Seventh Circuit expressly limited the reach of the language to different claims).

44.    The safe-harbor language used in the Payment Options Webpage was created specifically for cases where a debt collection letter stated a settlement date certain. Without a date certain, the language is false, deceptive, misleading, and confusing, and gives rise to FDCPA liability. *E.g., Al v. Van Ru Credit Corp.*, 2018 U.S. Dist. LEXIS 70321, at *9 (E.D. Wis. Apr. 26, 2018).

45.    Moreover, TrueAccord's failure to provide an expiration date for its settlement offer is a material misrepresentation because it misleads the unsophisticated consumer about a material term of the settlement offer. *Evory*, 505 F.3d at 775-76; *see Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, *13 (W.D. Okla. Mar. 30, 2017) (because debt collector's purported time-sensitive settlement offer included an obviously misprinted expiration date that

11

had already passed, "any consumer receiving [it] would be left to wonder about a material term of the offer, that is, the deadline for acceptance.").

46.     The unsophisticated consumer, not knowing when the settlement offer expired, would feel intimidated into paying.  *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the recipient feel that he is in over his head and had better pay up rather than question the demand for payment.").

47.     Moreover, providing the settlement offer within the 30-day validation period provided by the 9/9 E-mail contradicts and overshadows the consumer's validation rights.

48.     The settlement offer in the Payment Options webpage is confusing to the unsophisticated consumer because it encourages the consumer to tender a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

49.     The unsophisticated consumer, unsure when the settlement offer in the Payment Options Webpage expires, would feel compelled to make a settlement payment as soon as possible, and during the validation period, to ensure the settlement offer had not expired without notice prior to her tendering of payment.  Thus, there is an apparent contradiction between the settlement offer and the validation notice.

50.     The unsophisticated consumer would be confused about whether the settlement offer in the Payment Options Webpage would require her to forego her rights to validate the debt.

51.     The unsophisticated consumer would not know whether requesting verification of the debt would be interpreted as a rejection of the settlement offer.

52.     The plain language of the Payment Options Webpage is unclear as to how the debt collector would proceed in the event that the consumer mailed a dispute along with a payment that was intended to accept the settlement offer in the case that the debt could be verified.

53.     Where a consumer mailed a dispute along with a payment that was intended to accept a settlement offer in the Payment Options Webpage, under the terms of the Payment Options Webpage, the debt collector might:

   a. Hold the payment in escrow pending verification of the debt;

   b. Interpret the payment as an accord and satisfaction and settlement in full that contractually bars the consumer from requesting verification of the debt; or

   c. Send the payment back to the consumer pending verification of the debt, in which case the consumer may no longer be able to settle the debt because the offer would have expired while the debt collector was obtaining verification.

54.     Where a consumer mails a dispute along with a payment that was intended to accept a settlement offer with an impending expiration date, whether the FDCPA requires a debt collector to proceed along any of the above paths is an open question in the Seventh Circuit. *See Bailey v. TRW Receivables Management Services, Inc.*, 1990 U.S. Dist. LEXIS 19638, *7-8 (D. Haw. Aug. 16, 1990) ("There is nothing in the statute which indicates that a debt collector is not required to provide verification where a consumer requests it after paying the debt.").

55.     Whether accepting payment, or even holding payment pending verification, is a "further attempt to collect the debt" is an open question in the Seventh Circuit.  *See Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234, 1243 (D. Haw. Feb. 5, 2002) ("Because the debt collector in *Bailey* had already collected the debt, there was no collection to 'cease' pending validation.  In *Bailey*, keeping the consumer's money was tantamount to continuing collection activity.").

56.     The unsophisticated consumer would be confused as to whether she had effectively exercised her validation rights by sending a payment along with a dispute letter.

57.     The unsophisticated consumer may unwittingly reject a settlement offer by tendering the settlement payment along with her dispute letter.  If the debt collector treated the acceptance of a settlement offer as a continuing attempt to collect a debt, *see Sambor*, 183 F. Supp. 2d at 1243, the debt collector would need to return the settlement payment pending verification of the debt.

58.     Because the debt collector may be legally obligated to return the consumer's settlement payment pending verification of the debt, the expiration date would lapse before the consumer had effectively made the settlement payment.  By the time the debt collector verified the debt, the consumer would have missed her chance to settle the debt even though she attempted to tender a payment before the expiration date.

59.     Moreover, the unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in the Payment Options Webpage.

60.     The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay or take other action. This is the point of the 30 day period in 15 U.S.C. 1692g(a).  *See Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85,

14

95 (2d Cir. 2008) ("the aim of § 1692g is to provide a period for the recipient of a collection letter to consider her options.").

61. Prior to deciding whether to dispute a debt, a consumer may have to sort through personal records and/or memories to try to remember if the debt might be legitimate. She may not recognize the creditor – debts are freely assignable and corporations, especially banks, often change names.

62. The § 1692g validation period lasts for 30 days. It is the consumer's right to *request* verification until the end of the thirty day period. If the request is not made until the end of the thirty day period, the verification request would not be processed, researched by the creditor, and returned to the consumer until long after settlement offer payment deadline has expired. The consumer would be left with no time to review the verification and determine whether to accept the settlement offer.

63. The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offers in the Payment Options Webpage. The unsophisticated consumer would believe that the settlement offer would expire before the debt collector provides verification and would be left with little or no time to review the verification and determine whether to accept the settlement offer.

64. The effect of the settlement offer in the initial written debt communication is to discourage or prevent consumers from exercising their validation rights.

65. Defendant's "explanatory language" in the Payment Options Webpage, *see, e.g.*, *Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997), does not clarify how---or even whether---a debtor may both dispute the debt and take advantage of the settlement.

66. Any explanatory language should make clear whether a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt.

67. On or about September 13, 2019, TrueAccord sent Plaintiff another e-mail (the "9/13 E-mail") in connection with an attempt to collect the same alleged debt owed to "LVNV Funding LLC," A copy of the 9/13 E-mail is attached to this complaint as Exhibit D.

68. Upon information and belief, the 9/13 E-mail is another form e-mail, generated by computer, and with the information specific to Plaintiff inserted by computer.

69. The 9/13 E-mail states: You have already accepted our settlement offer, the last step you need to take is entering your payment information."

70. Despite such representations, Plaintiff neither accepted nor intended to accept any settlement offer made by TrueAccord.

71. Upon information and belief, the 9/13 E-mail is triggered automatically when a consumer follows the hyperlinks embedded in their form e-mails to visit the various webpages offering to settle the consumer's debt.

72. By falsely representing that Plaintiff had accepted a settlement offer during the validation period, the 9/13 E-mail overshadows the validation notice included in the 9/9 E-mail.

73. Plaintiff read the e-mails from TrueAccord and visited TrueAccords website.

74. Plaintiff was mislead and confused by the representations included therein.

75. The unsophisticated consumer would be mislead and confused by the representations included therein.

16

## ***The FDCPA***

76.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Sols.*, No. 17-cv-1671, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018); *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after Spokeo, have rejected similar challenges to standing in FDCPA cases.") (citing *Hayes v. Convergent Healthcare Recoveries, Inc., 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes … do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge

to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

77.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

78.     Plaintiffs who allege that debt collectors engaged in misrepresentations in their dunning letters have standing, as such misrepresentations risk injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt.*, No. 18-CV-1484, 2019 U.S. Dist. LEXIS 134377 *8-9 (E.D. Wis. Aug. 9, 2019) ("Protecting consumers

from misinformation is one of the 'concrete interest[s] that Congress sought to protect,' under the FDCPA. If a consumer is misinformed, rather than merely uninformed, the risk of harm is greater.") (internal citations omitted); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

79.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

80.     15 U.S.C. § 1692e(2)(A) specifically prohibits "the character, amount, or legal status of any debt."

81.     15 U.S.C. § 1692e(5) specifically prohibits debt collectors from making a "threat to take any action that cannot legally be taken or that is not intended to be taken."

19

82.    15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

83.    15 U.S.C. § 1692f generally prohibits "any unfair or unconscionable means to collect or attempt to collect any debt."

84.    15 U.S.C. § 1692g states:

(a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
…

(4) a statement that if the consumer notifies the debt collector **in writing** within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's **written request** within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(emphasis added)

85.    15 U.S.C. § 1692g(b) states, in part, that "collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

86.    The Seventh Circuit has held that a debt collector must disclose the debtor's rights to obtain verification in a non-confusing manner, and must ensure its representations to debtors do not contradict the validation notice. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("the debt collector may not defeat the statute's purpose by making the required disclosures in a form

20

or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude.").

87.     The false statement or implication during the thirty-day validation period that a consumer may effectively communicate her dispute by telephone is a material false statement. *E.g., Flowers*, 1997 U.S. Dist. LEXIS 6070, *7-9.

## **COUNT I – FDCPA**

88.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

89.     By representing that the consumer may effectively communicate their dispute by telephone, the Disputes Webpage contradicts and overshadows the disclosure of the consumer's rights to obtain verification of the debt and the name and address of the original creditor, which were included in TrueAccord's 9/9 E-mail.

90.     The Disputes Webpage is likewise misleading because the letters imply that a consumer may effectively communicate a dispute by telephone rather than in writing.

91.     Defendants thereby violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, and 1692g(b).

## **COUNT II – FDCPA**

92.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

93.     By stating "We are not obligated to renew this offer" with regard to settlement offer with no specific deadline, the Payment Plan Webpage includes representations which are false, deceptive, and misleading because such statements falsely threaten to revoke such settlement offers, and thereby overshadow the validation notice.

94.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692g(b).

## COUNT III – FDCPA

95.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

96.     By stating "You already accepted our settlement offer…" the 9/13 E-mail includes representations which are false, deceptive, and misleading as to the character and legal status of Plaintiff's alleged debt as well as overshadows the validation notice.

97.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692g(b).

## CLASS ALLEGATIONS

98.     Plaintiff brings this action on behalf of two proposed classes.

99.     Class I consists of: (a) all natural persons in the state of Wisconsin, (b) to whom TrueAccord sent an e-mail in the form of Exhibit A to the Complaint in this Action, (c) where the e-mail sought to collect a debt which was incurred for personal, family, or household services, (d) and the e-mail was sent between September 19, 2018 and September 19, 2019, inclusive.

100.     Class II consists of: (a) all natural persons in the state of Wisconsin, (b) to whom TrueAccord sent an e-mail in the form of Exhibit B to the Complaint in this Action, (c) where the e-mail sought to collect a debt which was incurred for personal, family, or household services, (d) and the e-mail was sent between September 19, 2018 and September 19, 2019, inclusive.

101.     Each class is so numerous that joinder is impracticable.

102.     Upon information and belief, there are more than 50 members of each class.

22

103.	There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

104.	Plaintiff's claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

105.	Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

106.	A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

107.	Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)	actual damages;

(b)	statutory damages;

(c)	attorneys' fees, litigation expenses and costs of suit; and

(d)	such other or further relief as the Court deems proper.

Dated:  September 19, 2019

**ADEMI & O'REILLY, LLP**

By:	/s/ Mark A. Eldridge
	John D. Blythin (SBN 1046105)
	Mark A. Eldridge (SBN 1089944)
	Jesse Fruchter (SBN 1097673)
	Ben J. Slatky (SBN 1106892)
	3620 East Layton Avenue

23

Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com